UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

SHARIDAN A. OLIVER )
)
V. ) NO. 2:12-CV-480
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's application for disability insurance benefits under the Social Security Act was denied by the Commissioner following a hearing by an Administrative Law Judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 10], and the defendant has filed a Motion for Summary Judgment [Doc. 12].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 43 years of age at the time the ALJ denied her application for benefits. She has a high school education and all parties agree that she cannot return to any past relevant work.

The plaintiff's medical history, including both treatment records and medical and mental evaluations, is summarized in the Commissioner's brief as follows:

> The medical evidence reflects that, in 2009 and 2010, Plaintiff's primary care physician treated her for depression and anxiety by prescribing psychotropic medication (Tr. 249, 269, 274-276, 283, 286-287, 292, 393). On April 26, 2011, Plaintiff was evaluated at The Solution Source, LLC (Solution), and diagnosed with Bipolar Disorder, Depressed with Psychotic Features and Opiate Dependence (Tr. 363). On examination, Plaintiff's insight and judgment were fair, and her mental status was within normal limits for appearance, behavior, speech, thought processes, orientation, memory, attention, and concentration (Tr. 362). Her mood and affect were labile and she reported auditory hallucinations (Tr. 362). A Global Assessment of Functioning (GAF) score of 45 was assessed, and Plaintiff was prescribed Lamictal, a mood stabilizing medication (Tr. 363). When Plaintiff returned on May 10, 2011, she was noted to be pleasant and cooperative, with a labile mood and affect but fair insight and judgment (Tr. 365). A GAF score of 48 was assessed (Tr. 364). At Plaintiff's next, and last documented, visit on May 31, 2011, her mental status examination remained essentially unchanged (Tr. 366-367). On August 2, 2011, Solution social worker Cassandra Thomas completed an assessment indicating that Plaintiff has poor (seriously limited but not precluded) abilities to relate to co-workers; deal with the public; deal with work stresses; maintain attention and concentration; perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember and carry out complex job instructions; behave in an emotionally stable manner; and relate predictably in social situations (Tr. 369-371).

2

Plaintiff visited the Johnson City Downtown Clinic on June 17, 2011 and requested prescriptions for Lamictal and an anti-depressant (Tr. 375). While Plaintiff was tearful, she was alert and oriented and did not appear to be in acute distress (Tr. 375). Plaintiff was assessed with Bipolar disorder, prescribed medication, and referred to behavioral health (Tr. 376). On September 30, 2011, Plaintiff was evaluated at the Veterans Affairs Medical Center (VAMC) (Tr. 382). While Plaintiff's mood was slightly dysphoric and her affect blunted, she was alert, oriented, interactive, and pleasant (Tr. 387). The examiner found Plaintiff's memory intact, her thoughts logical and goal-directed, and her judgment fair (Tr. 387). A GAF score of 50 was assessed (Tr. 382). Plaintiff was diagnosed with Bipolar Disorder, Type II, by history, and Anxiety Disorder, by history, and her medication was adjusted (Tr. 388). When Plaintiff returned to the VAMC on January 4, 2012, she appeared healthy, alert, oriented, cooperative, and appropriately groomed (Tr. 451-452). Though Plaintiff's mood was depressed and her affect tearful, her thought processes were logical and goal-directed, and her memory, judgment, and insight were intact (Tr. 451). She reported auditory and visual hallucinations, but denied paranoia and suicidal or homicidal ideation (Tr. 451). A GAF score of 45 was assessed (Tr. 451). Her diagnoses were Bipolar II Disorder, Currently Depressed, Severe with Psychotic Features and Anxiety Disorder NOS, and her medications were adjusted (Tr. 451).[1]

In January 2011, Plaintiff underwent physical and mental consultative examinations (Tr. 313, 320). Dr. Marianne E. Filka observed during her physical examination that Plaintiff was cooperative, a good historian, pleasant, neat and clean in appearance, alert, oriented, and logical (Tr. 316-317). Dr. Filka found Plaintiff's attention and concentration appropriate, and observed that she did not appear depressed or anxious (Tr. 317). When examined by consultative examiner William Sims, however, Plaintiff displayed a depressed, anxious, and tearful mood and affect (Tr. 320). Plaintiff told Mr. Sims that she cannot concentrate to read the newspaper, gets distracted by people and noises, and frequently loses her train of thought (Tr. 323). On examination, Plaintiff performed serial threes with one error, spelled the word "world" forward and backward, recalled one of three words after five minutes, and named three cities, the colors of the flag, the shape of a ball, the current President, and the approximate costs of common items at the store (Tr. 321). Plaintiff maintained an adequate stream of conversation and levels of concentration and attention (Tr. 321). She reported having vague auditory and visual hallucinations (Tr. 321). Mr. Sims assessed mild limitations in Plaintiff's abilities to understand and

---

[1] Inexplicably, the Commissioner's description of the plaintiff's treatment at the VAMC, which factored into the ALJ's credibility determination, failed to mention a treatment record regarding plaintiff's physical symptoms from October 21, 2011, which indicated that "secondary gain is also suspected" and their assessment of plaintiff was based in part on "symptom magnification and complete absence of objective findings to suggest that pain is musculoskeletal in nature." (Tr. 380)

> remember, and moderate limitations in interacting with others, sustaining concentration and persistence, and adapting to change (Tr. 323). Psychologist Diane L. Whitehead reviewed and concurred with Mr. Sims' assessment (Tr. 323).
>
> State agency psychologist, Dr. Cynthia Jackson, reviewed the record and assessed that Plaintiff has mild restrictions in activities of daily living, and moderate limitations in social functioning and concentration, persistence or pace (Tr. 340). She further opined that the Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, to perform at a consistent pace, to perform activities within a schedule, maintain regular attendance, to be punctual within customary tolerances, and to complete a normal work day and work week without interruptions from her symptoms (Tr. 344-345). She further opined that Plaintiff could maintain concentration, persistence and pace for a two hour time period in an eight hour day with customary breaks (Tr. 346).

[Doc. 13, pgs. 2-5].

At the administrative hearing, the plaintiff testified as to her symptoms and activities. The ALJ then called Dr. Norman Hankins, a vocational expert ["VE"]. The ALJ asked Dr. Hankins to assume that the plaintiff had to physical capacity for light work. He then asked him to assume that mentally, the plaintiff "can only perform and maintain concentration for simple, routine, repetitive tasks, assume that she can adapt to gradual and infrequent changes in her work setting, and finally assume that she is limited to work with no public contact." After stating that the plaintiff could not return to her past jobs with those restrictions, Dr. Hankins stated that she could perform jobs such as inspectors, testers and sorters, hand packers, garment prssers, and electrical and electronic equipment assemblers. He stated that there were approximately 6, 670,002 such jobs in the national economy, with 146,000 in the State of Tennessee. If she had the limitations opined by Ms. Thomas, plaintiff's social worker, she could do no jobs. (Tr. 66-68).

In his hearing decision, the ALJ found that plaintiff had severe impairments of fibromyalgia; mild right and left facet arthritis at L4-5 and L5-S; Major Depressive Disorder,

4

Recurrent, Moderate; Anxiety Disorder NOS; and Bipolar Disorder, Depressed with Psychotic Features. (Tr. 19). He then thoroughly discussed all of the medical evidence from all treating sources, and the expert opinions of Dr. Filka and Mr. Sims.

The ALJ then discussed the "paragraph B" criteria of mental health listings 12.04 and 12.06. To satisfy the paragraph B criteria, a mental impairment must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of an extended duration. He defined "marked" as being "more than moderate and less than extreme. He then stated his findings of the level of limitation in each of the areas of the paragraph B criteria. With regard to activities of daily living, he found that she had a moderate restriction. In social functioning, he found the plaintiff had "marked difficulties." Regarding concentration, persistence or pace, he stated that she had moderate difficulties. Finally, he found she had no episodes of decompensation. (Tr. 22).

The ALJ then stated that the degree of limitation he found under the paragraph B criteria reflected the degree of limitation included in his statement of the plaintiff's residual functional capacity ["RFC"], which found that the plaintiff "has the residual functional capacity to perform light work consistent with the ability to maintain concentration and attention for simply, routine, repetitive tasks and adapt to gradual and infrequent changes in the work setting. The [plaintiff] should have no contact with the general public." (Tr. 23).

He then discussed the plaintiff's subjective complaints of her symptoms and their degree of impact she stated they had on her ability to function. He found that her "statements

5

concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." He then discussed the findings on examination by Dr. Filka and the VAMC which were contrary to the plaintiff's subjective physical complaints. He also mentioned the VAMC's suggestion that secondary gain on the part of the plaintiff was suspected, and that there was evidence of symptom magnification. Although discussing her physical complaints, he noted their impressions of the plaintiff's mental state and appearance. He did, however, find that the plaintiff was more limited in her lifting capability than opined by Dr. Filka and thus limited her to work at the light level of exertion. (Tr. 24).

Regarding his RFC findings regarding what she could do despite her mental impairments, he noted that plaintiff had not sought "ongoing regular mental health treatment," and had not required psychiatric hospitalization. He stated that no significant adverse side effects of medications were noted. He also discussed the findings of Mr. Sims and the State Agency psychologists, noting that they found no more than moderate limitations. He gave them great weight, although curiously he found a marked limitation in social functioning. He also throughly discussed Ms. Thomas' assessment, finding it was "not well supported by medically acceptable clinical findings and [was] inconsistent wtih other substantial medical evidence of record and the [plaintiff's] benign clinical presentations." (Tr. 25).

The ALJ then found, based upon the VE's response to the hypothetical question, that there were a substantial number of jobs the plaintiff could perform. Accordingly, he found that she was not disabled. (Tr. 26-27).

6

Plaintiff alleges various errors, all of which are related to the ALJ's handling of her mental impairments. Plaintiff first asserts that the ALJ erred in his hypothetical to VE, because the hypothetical was inadequate to account for the limitations caused by her deficiency in concentration, persistence or pace. Plaintiff suggests that as a result of *Ealy v. Commissioner of Soc. Sec.*, 594 F.3rd 504 (6th Cir. 2010), and other cases, merely limiting a plaintiff to jobs which are "simple, routine, repetitive tasks" with only "gradual and infrequent changes in the work setting" and "no contact with the general public does not accurately describe the plaintiff's functional restrictions. Thus, states plaintiff, the ALJ cannot rely upon the hypothetical in his finding that jobs existed and that the plaintiff was not disabled.

In *Ealy*, the hypothetical asked by the ALJ to the VE was very similar to that used by the ALJ in the present case. He asked the VE to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id*. at 516. In that case, the ALJ was relying upon the opinion of a state agency psychologist. The Sixth Circuit noted that the ALJ stated that his assessment was "consistent" with that of the psychologist. The problem was that it was not. One of the state agency psychologist's specific findings was that the ability of Mr. Ealy to sustain attention to complete simple repetitive tasks was limited to [two-hour] segments over an eight hour day where speed was not critical." *Id*. The Court stated that for the ALJ's hypothetical to accurately describe Mr. Ealy's situation, it would have to state that "the speed of his performance could not be critical to his job." In the present case, the state agency psychologist did not include a statement limiting plaintiff to situations where "speed was not critical." While it is true that *Ealy* cites, somewhat in dicta,

7

a district court case which held that where a claimant has moderate limitations in concentration, persistence or pace, the hypothetical will never be adequate when it merely limits the claimant to simple, routine, unskilled work,[2] this Court is unwilling to make such a jump. The Court finds that the hypothetical question in the present case was adequate to express the limitations found by the ALJ, and that there was substantial evidence for those limitations.

The Court is also mindful of the fact that the term "moderate" used in describing the degree of functional limitation on the "Psychiatric Review Technique" form utilized in evaluating mental impairments, although apparently no longer defined on the form itself, was previously defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." *Moore v. Astrue*, 623 F.3d 599, 603 (8th Cir. 2010). Thus, a "moderate" limitation in the area of concentration, persistence or pace should not logically carry the impact in the adjudicatory process that some suggest. The fact that an individual may not function at the same pace as others is a limitation, but if the person still performs "satisfactorily," that does not denote disabled status. The ALJ found a "marked" limitation in social functioning, but there is no question that his RFC finding with no contact with the general public accommodates for that.

The plaintiff also argues that the ALJ failed to make a "meaningful analysis" of the opinion of Ms. Thomas, the plaintiff's social worker. Acknowledging that she is not accorded the deference due to a treating psychologist or other "acceptable medical source," the plaintiff nonetheless asserts that the ALJ did not adequately explain his reasoning in

---

[2] *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930-31 (E.D. Mich. 2005).

8

according her little weight. He gave her little weight because Ms. Thomas' opinion came after only 3 visits, because it was not "well-supported by medically acceptable clinical findings," because it was inconsistent as to degree of functional limitation with other evidence in the form of the opinions of Mr. Sims and the state agency psychologists, and because the plaintiff had a benign clinical presentation. It does not appear to the Court that the ALJ was on a mission to discount Ms. Thomas' opinions because of her status as a social worker, or because her opinion would have undermined his RFC finding and, in the opinion of the VE, eliminated any jobs which the plaintiff could perform. Rather, he was more impressed with the analyses of the other persons who examined the plaintiff, as well as her benign presentation when she was not seeking "secondary gain," in the words of the Veterans Administration personnel. Likewise, that observation by the VA, as well as the ALJ's weighing of her testimony at the hearing, provided substance for his determination that the plaintiff was not fully credible.

Mrs. Oliver has mental symptoms, and these symptoms impose some restriction on her ability to function. But the Court simply cannot say that the ALJ abused his discretion as the finder of fact in his determination of the level of impairment imposed by those symptoms. There is substantial evidence to support his decision. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 10] be DENIED, and the Commissioner's Motion for Summary Judgment [Doc. 12] be GRANTED.[3]

---

[3]Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

9

Respectfully submitted,

  s/ Dennis H. Inman
United States Magistrate Judge